BORDEN'S FARM PRODUCTS OF NEW JERSEY, INC., A
CORPORATION OF NEW YORK, PLAINTIFF, v. THE
BOARD OF HEALTH OF THE BOROUGH OF SOMER-
VILLE, AND WILLIAM R. SUTPHEN, SECRETARY
THEREOF, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided June 2, 1955.

*Mr. Alfred I. Manson, Jr.*, for the plaintiff (*Messrs. Pitney, Hardin & Ward,* attorneys).

*Mr. Edward B. Currie* and *Mr. Arthur B. Smith,* for the defendants.

*Mr. Grover C. Richman, Jr.*, Attorney-General (*Mr. Joseph Lanigan*, Deputy Attorney-General, appearing, filed brief in behalf of the Secretary of Agriculture, *amicus curiae*).

SMALLEY, J. S. C. This action is in lieu of prerogative writ and seeks to set aside a resolution of the Board of Health of the Borough of Somerville (sometimes hereinafter referred to as the "board"), denying plaintiff (sometimes hereinafter referred to as "Borden's"), a license to sell milk and milk products in the Borough of Somerville. The suit also seeks to have declared invalid certain of the provisions of the board's ordinance. The ultimate goal of the plaintiff is a license to sell milk and milk products in the Borough of Somerville heretofore denied by the board of health of that borough.

Testimony was taken. It may be observed, however, that there seems to be no real factual dispute but that a question of law is presented for determination.

The Board of Health of the Borough of Somerville enacted an ordinance entitled "The Sanitary Code of the Borough of Somerville (Revision of 1942)," thereafter amended and supplemented, and hereafter referred to as the "ordinance." Article XI, Subdivision A, Sections 1, 2, 3 and 4 provide:

"Section 1. No fluid milk products shall be sold, offered for sale, or distributed in The Borough of Somerville, in the County of Somerset, except by persons licensed by The Board of Health of the said Borough so to do.

Section 2. No person shall apply to the said Board of Health for a license to sell, offer for sale, or deliver milk, modified milk, skim milk or sweet creams, hereinafter referred to as 'fluid milk products,' unless he possesses a current license issued by the New Jersey State Department of Health, and a current license issued by the New Jersey State Department of Agriculture to produce, process and distribute New Jersey official grades 'A' and 'B' pasteurized milks and creams.

Section 3. (a) All applications for licenses to sell, offer for sale, or distribute fluid milk products in the said Borough shall be addressed to The Board of Health of the said Borough and shall be filed with the Health Officer of the said Borough, and at the time of the filing of every such application there shall also be produced before the Health Officer evidence that the applicant, including its producing, processing and distributing subdivisions, com-

plies with all of the laws of the State of New Jersey and all of the regulations of the New Jersey State Department of Health, and of the New Jersey State Department of Agriculture, pertaining to New Jersey official grades 'A' and 'B' pasteurized milks and creams.

(b) Upon application being made for a license as required by the provisions of Subdivision A of this Article, and whenever required by the Board of Health or its Health Officer, Inspector or Agents, there shall be filed by the applicant a verified written statement of his entire source of supply of fluid milk products. This statement shall contain a statement of the grade or grades and classifications of fluid milk products which the applicant proposes to sell, the names and post-office addresses of the owners of each dairy, creamery, receiving station, bottling place and pasteurizing plant from which said supply is procured and shall bear the signature of the application. Before any change is made in the source of supply or any additional supply is received, written permission so to do must first be obtained from the Board of Health, or its duly authorized agents.

(c) No fluid milk products shall be sold or delivered in the Borough of Somerville, which shall have been produced by cows while in the hands of a cattle dealer or dealers.

Section 4. Following the filing of an application for a license to sell, offer for sale, or deliver fluid milk products in the said Borough of Somerville, the Health Officer of the said Borough, or a duly authorized inspector, or agent of the Board of Health, shall as he may deem it necessary to the public health, investigate the sources, production, processing and distributing facilties, practices and records of the applicant and shall report his findings to The Board of Health of the said Borough. On approval of the application by the said Board of Health and on payment of a license fee of $2.00 for the first place or vehicle to be used by the licensee in the Borough in the distribution or sale of fluid milk products, plus $1.00 for each additional place or vehicle so to be used by the licensee, which fees shall accompany the license application, the Secretary, or in his absence, the President of the Board of Health, shall issue a license, which shall remain effective, unless earlier revoked or suspended for cause, until the last day of June following the date of issuance thereof."

On June 23, 1953 Borden's filed with the board of health a written application for a license to sell, vend, or deliver (wholesale or retail) milk and milk products in the Borough of Somerville, accompanying its application with a check for the requisite fee. The application was on a printed form supplied by the board. Borden's application stated in part that if a license was granted to it, it would at all times comply with the provisions, rules and regulations of the Borough of Somerville for the sale of fluid milk products and non-

fluid dairy products "except as to any requirement of the Ordinance of the Borough of Somerville requiring that the applicant possess a current license issued by the New Jersey State Department of Agriculture to produce, possess and distribute New Jersey official grades 'A' and 'B' pastuerized milk and cream."

It will serve no useful purpose to recite the action of the board during the months of August and September of 1953 except to recite that on November 13, 1953 the board advised the plaintiff of the passage of a resolution on October 27, 1953 denying plaintiff's application for a license on the grounds that plaintiff had failed to comply with the provisions of Article XI and in particular with subdivision (A), (2) and (3).

It is conceded that one may not obtain a license by the New Jersey State Department of Agriculture (sometimes hereinafter referred to as "Agriculture") to produce, process and distribute New Jersey official Grades "A" and "B" unless the milk is produced within the State of New Jersey, and further complies with the standards interposed by Agriculture which are admittedly more stringent than the regulations of the New Jersey State Department of Health.

It is Borden's contention that New Jersey is known as a "milk deficiency State"; within its borders is produced approximately one-half of the total milk consumed by its population. The statement of Borden's that the Borough of Somerville is the only municipality within the State that has the requirements now under review in this dispute while not dispositive, is at least interesting.

Borden's finds no fault with the regulations of Agriculture. It contends that Agriculture forms no part of the milk licensing scheme in this State, but rather Agriculture's main concern is with the marketing and distributing of agricultural and other products and not with health.

R. S. 4:10–3 provides:

"The department of agriculture may * * * establish * * * standards that *may* be used by producers * * * for the grading * * * of farm products * * *." (Emphasis supplied.)

Borden's contends that the regulations of Agriculture clearly indicate that the purpose is economical, to foster the sale of milk products in New Jersey, but such a program is elective and not mandatory.

In regulation 11 of Agriculture is found the provision that no one shall sell milk as "New Jersey Grade A. Pasteurized milk" without having first a certificate from Agriculture certifying that all of its regulations have been complied with; and in regulation 8 is found the core of the controversy between the parties to this action. "Milk distributed or sold as New Jersey Grade A. Pasteurized milk shall be produced within the boundaries of the State of New Jersey." Counterparts of the provisions are also found in the Regulations in respect to Grade "B" milk and cream.

It is also conceded that the minimum requirements of the ordinance of the Borough of Somerville, which are a duplicate of the minimum requirements of Agriculture, exceed the minimum requirements of the State Board of Health as to such items as butter fat, bacteria before and after pasteurization, and inspections.

Borden's contention may therefore be said to be that, provided its milk meets the requirements of the Department of Health of the State, the Borough of Somerville may not require its milk to be produced in the State of New Jersey and to meet the requirements of Agriculture which are admittedly higher than required by the Department of Health of the State.

The defendants stoutly contend that such authority is given to the local board of health together with wide discretionary powers to enact ordinances for the protection of public health. R. S. 24:10–23 provides:

"The local board may pass, alter or amend ordinances and rules for the licensing and regulating of any person engaged, either as principal or agent, in the production, distribution or sale of milk or cream within its jurisdiction."

Defendants further contend that a local board of health may adopt standards higher than those provided by the State.

*N. J. S. A.* 26:1A–4 calls for the establishment of a Public Health Council as part of the State Department of Health, with power to enact a State Sanitary Code. *N. J. S. A.* 26:1A–7 provides that:

"The State Sanitary Code may cover any subject affecting public health, or the preservation and improvement of public health and the prevention of disease in the State of New Jersey. * * *"

The broad powers granted to the Public Health Council are also given to local boards of health by *N. J. S. A.* 26:1A–9 which provides as follows:

"The provisions of the State Sanitary Code shall have the force and effect of law. Such code shall be observed throughout the State and shall be enforced by each local board of health, the local police authorities and other enforcement agencies. Nothing herein contained however shall be deemed to limit the right of any local board of health to adopt such ordinances, rules and regulations, as, in its opinion, may be necessary for the particular locality under its jurisdiction; but such ordinances, rules and regulations shall not be in conflict with the laws of this State or the provisions of the State Sanitary Code, except, however, that such ordinances, rules and regulations may be more restrictive than the provisions of the State Sanitary Code."

Defendants further insist that to permit milk to be sold in the Borough of Somerville that is produced outside the confines of New Jersey, places a burden on the defendants of inspection which cannot be complied with because of the board's inability to make adequate inspections outside the State at the place of production.

It is also the defendants' contention that should any portion of the ordinance be declared to be invalid, that defendants are entitled to a declaratory judgment on their counterclaim: (a) as to the extent to which the standards fixed by the ordinance should be modified, and (b) the extent to which the defendants' inspection services should be extended or modified if likewise found invalid or unenforceable.

In *Dean Milk Co. v. City of Madison*, 340 *U. S.* 349, at *page* 354, 71 *S. Ct.* 295, at *page* 297, 95 *L. Ed.* 329, at *page*

333 (1951), the court in holding that the ordinance imposed an undue burden on interstate commerce in violation of the Commerce Clause of the Federal Constitution, stated;

"But this regulation, like the provision invalidated in *Baldwin v. G. A. F. Seelig, Inc.* [294 *U. S.* 511, 55 *S. Ct.* 497, 79 *L. Ed.* 1032], *supra*, in practical effect excludes from distribution in Madison wholesome milk produced and pasteurized in Illinois. 'The importer \* \* \* may keep his milk or drink it, but sell it he may not.' *Id.*, 294 *U. S.*, at *page* 521, 55 *S. Ct.* [497] at *page* 500 [79 *L. Ed.* 1037, 101 *A. L. R.* 55]. In thus erecting an economic barrier protecting a major local industry against competition from without the State, Madison plainly discriminates against interstate commerce. This it cannot do, even in the exercise of its unquestioned power to protect the health and safety of its people, if reasonable nondiscriminatory alternatives, adequate to conserve legitimate local interests, are available."

*Welsh Farms, Inc., v. Bergsma,* 16 *N. J. Super.* 295, (*App. Div.* 1951), concerned the validity of certain regulations of the State Department of Health of New Jersey, among them a requirement that labels of all packages of milk sold for fluid consumption in New Jersey should show whether the contents were produced in this State. The court, speaking through Judge Jayne, struck down the requirement as being a burden on interstate commerce contrary to the Federal Constitution, stating at *page* 316 of 16 *N. J. Super.*;

"This unessential and burdensome requirement likewise displays its affinity to the resistance against interstate competition. Since all milk from whatever licensed sources must conform to the same standards of quality and purity, this discriminatory imposition does not appear to have any substantial, practical, or beneficial relation to the public health."

And at *page* 298 of 16 *N. J. Super.*;

"New Jersey is characterized as a milk deficiency state in that the resident producers supply less than 50% of the State's requirements. The deficit is satisfied by the importation of milk into New Jersey through the channels of interstate commerce from sources in the states of New York, Pennsylvania, Maryland, and others."

And again at *page* 299 of 16 *N. J. Super.*;

"It is exceedingly significant to recognize that the milk which is transported into New Jersey from the surrounding states is exposed to the same sanitary regulations and must meet the same standards of identity and quality as that produced in New Jersey."

The effect of this section of the ordinance in prohibiting the sale in the Borough of Somerville of milk produced outside of New Jersey deprives plaintiff of its right to engage in a lawful business in violation of the provisions of the 14th Amendment of the Constitution of the United States. Such a deprivation was disproved in *Sheffield Farms Co. v. Seaman*, 114 *N. J. L.* 455 (*Sup. Ct.* 1935), and is likewise in contravention of Article I of the Constitution of New Jersey. *Reingold v. Harper*, 6 *N. J.* 182 (1951).

The second phase of the problem as to whether the Board may enact higher requirements than set forth by the Department of Health of this State is indeed perplexing.

It will be conceded that milk has been the subject of comprehensive regulations. This State has enacted many laws governing the sale of milk and milk products. See *R. S.* 24:10–1 to 136, inclusive. Permits are required by the State to engage in the milk business. *R. S.* 24:10–2. Standards for production and the handling of milk products, *R. S.* 24:10–15; and for plants processing milk, *R. S.* 24:10–16. Local boards of health are required to enforce the provisions of the various acts within their respective jurisdiction. *R. S.* 24:2–2.

The laws pertaining to milk and milk products deal with the subject in the most minute detail. The Department of Health of this State is empowered to promulgate rules and regulations concerning the subject but appears to have made few additions to the statutes on this subject. These regulations, which are found in Exhibit P-11, consist of but three mimeographed sheets and deal with the subject of raw milk, acceptable management, procedure on open or loose housing of cattle, and with bacteria counts. This fact attests to the comprehensiveness of our statutes on the subject of milk generally.

If it is to be held that the local board may enact mandatory, higher, or more stringent requirements than the State, then it must necessarily follow that a chaotic condition would exist in so far as meeting the requirements of every local municipality in the production, sale and distribution of milk and milk products.

It must be admitted, however, that the local boards of health have in some instances the right to fix maximum temperatures at which milk shall be delivered to the receiving station or milk plant, and may prescribe conditions regarding milk containers collected from premises where there are contagious diseases, along with the right to require medical examinations of persons connected with milk plants. Such authority has been given to the local boards by the Legislature.

*R. S.* 24:10–23 to 31, inclusive, specifically empowers the local board to pass ordinances and rules for licenses and regulations of the persons dealing with milk, to charge a license therefore, and to require a list of the sources of applicant's milk. The licensee is further required to give notice of any change in the source of supply. The local board is further empowered to refuse a license to any one violating the state sanitary requirements and to revoke a license for any such violation.

In 1947, in an act providing for the establishment in the Executive Branch of the State Government of a State Department of Health, the functions, powers and duties of the State Board of Health and of the Director of Health were transferred and vested in the State Department of Health to be exercised in accordance with said act, "and as otherwise provided by law." *L.* 1947, *c.* 177, § 55 (*N. J. S. A.* 26:1A–55). By *L.* 1947, *c.* 177, §§ 7, 8, as amended *L.* 1950, *c.* 29, § 3; *L.* 1953, *c.* 165, §§ 1, 2 (*N. J. S. A.* 26:1A–7, 8) the Public Health Council was given power to establish sanitary regulations dealing with public health, to be called the "Sanitary Code." The Code, by *L.* 1947, *c.* 177, § 9 (*N. J. S. A.* 26:1A–9), has the force and effect of law, and "* * * shall be observed throughout the State and shall be enforced by

each local board of health  *  *  *.  Nothing herein contained however, shall be deemed to limit the right of any local board of health to adopt such ordinances, rules and regulations, as, in its opinion, may be necessary for the particular locality under its jurisdiction; *but such ordinances, rules and regulations shall not be in conflict with the laws of this State* or the provisions of the State Sanitary Code, except, however, that such ordinances, rules and regulations may be more restrictive than the provisions of the State Sanitary Code." (Emphasis supplied.)

It is conceded that Borden's held a current license issued by the State Department of Health at the time it made its application to the board for its license and it is to be presumed that by the possession of the aforesaid license it has complied with all of the regulations of the New Jersey State Department of Health.

█ Perhaps there is some confusion brought about by the reading of the State Sanitary Code with the food and drug laws of this State. It would, therefore, seem that in the event that there is a conflict between the Code (State Sanitary Code) and the statutes, then it must follow that the statutes govern, not the code, whether local or state. *Urban v. Taylor*, 14 *N. J. Misc.* 887 (*Sup. Ct.* 1936).

█ This whole matter revolves around a misconception of the purpose of the requirements of Agriculture upon the part of the local board. It is conceded, of course, that the consuming public is entitled to every reasonable safeguard as to milk and milk products. It takes no imagination to recognize that some consumers will want their milk produced in New Jersey. They will want the certificate of Agriculture; they will seek out and purchase milk where the minimum requirements exceed those of the State Board of Health. Many of the consumers in the Borough of Somerville being accustomed to having their milk produced at the very boundaries of the community may have no part in the purchasing of milk not produced locally and failing a standard in excess of the minimum requirements of the State Board of Health. However, if a producer of milk wishes to market his product

in the Borough of Somerville, meeting the competition of the milk produced locally or in the State of New Jersey, that right must be his, provided, of course, that he meets the requirements of the State Board of Health and the further requirements of the local board which it is specifically authorized to enact by law.

■ The board's third separate defense, that its present inspection facilities are only adequate to insure an ample supply of milk for the inhabitants of the Borough of Somerville by the use of Agriculture's facilities for inspection, is completely answered by *R. S.* 24:10–13 which provides as follows:

"Whenever a municipality within this state is unable for any reason to conduct a thorough and efficient system of inspection, the governing body of such municipality shall, within sixty days prior to the end of each calendar year, certify by resolution its inability so to do and shall state in the resolution in detail the reasons for such inability. A certified copy of such resolution shall be forwarded to the state department which may investigate said reasons and determine for itself the sufficiency thereof.

Upon being satisfied that the reasons set forth in the municipal resolution are correct, the state department shall take over, supersede and conduct the inspections on behalf of the municipality. Such inspections shall terminate at the end of the calendar year unless the municipality shall again call upon the state department, in the manner set forth in this section, to again renew such service."

■ Borden's is entitled to its license from the Board of Health of the Borough of Somerville. It is, however, unnecessary to declare the entire ordinance invalid. Such provisions of the ordinance as contrary to this determination may be struck without invalidating the entire ordinance.

There will be judgment for the plaintiff and against the defendants. Defendants' counterclaim seeking a declaratory judgment is an attempt to have this court substitute its judgment in matters which are purely legislative and which belong entirely to the local board of health.

A form of judgment, accordingly, may be submitted on notice.