The  GREAT  ATLANTIC  &  PACIFIC
TEA  COMPANY,  INC.,  Plaintiff,

v.

H. B.  COTTRELL,  M. D.,  Health  Officer,
State of Mississippi, Defendant.

Civ. A. No. 72J–212(R).

United States District Court,
S. D. Mississippi,
Jackson Division.

Oct. 28, 1974.

Alex A. Alston, Jr., Charles R. Davis, Jackson, Miss., for plaintiff.

Heber A. Ladner, Jr., R. Hugo Newcomb, Sr., A. F. Summer, Atty. Gen., Jackson, Miss., for defendant.

Before COLEMAN, Circuit Judge, and RUSSELL and COX, District Judges.

## OPINION OF THE COURT

PER CURIAM.

Plaintiff, The Great Atlantic & Pacific Tea Company, Inc., a Maryland corporation doing business in both the States of Louisiana and Mississippi, filed the above styled action against Hugh B. Cottrell, M.D., the chief health officer for the State of Mississippi, seeking a declaratory judgment voiding Section 11 of the "Regulation Governing the Protection and Sale of Milk and Milk Products" adopted by the Mississippi State Board of Health on December 14, 1967, and injunctive relief restraining and enjoining the named defendant and his subordinates from excluding plaintiff from doing business in Mississippi pursuant to said Section 11. Jurisdiction is invoked under 28 U.S.C. §§ 1331 and 2201. Plaintiff, also called A & P, is engaged in the processing of fluid milk at its Kentwood, Louisiana, plant, for delivery to its retail stores in Louisiana and Mississippi. Plaintiff alleges that the defendant, charged with enforcing Section 11 of the Mississippi regulations, refuses to permit the entry into Mississippi of plaintiff's milk in the absence of a reciprocity agreement between Mississippi and Louisiana, and that, accordingly, Section 11 is unconstitutional in that it imposes an undue and arbitrary restriction on the free flow of commerce between the states, in violation of Article I, Section 8, Clause 3 of the U.S. Constitution. The defendant contends that Section 11 not only does not constitute a barrier to interstate commerce, but actually was adopted to open the milk trade with all other states; that its effect is to lower trade restrictions; and that the reciprocity clause is necessary to insure the enforcement of minimum health standards for milk originating out of the state. This Court finds that Section 11, including the reciprocal clause, is constitutional on its face presenting no barriers to trade between Mississippi and such states as agree to reciprocity of inspection standards.

Prior to a full hearing on the merits, the undersigned, managing Judge denied a preliminary injunction in the absence of a three-judge Court to consider the constitutionality of Section 10, said section being a part of regulations of statewide import, and for the reason that plaintiff had failed to present evidence of irreparable harm in the absence of relief. The Court's findings appear of record in an opinion of November 22, 1972, unreported.

A three-judge Court, having been duly designated, has received evidence, consisting of lengthy stipulations of facts and exhibits thereto. At the conclusion of the evidence and oral argument, the Court requested both parties, by brief, to explore the possibility of joining the State of Louisiana as an indispensable party. Such briefs, as well as trial briefs, have been submitted.

The parties and the Court agree that the State of Louisiana is not subject to process under the Federal Rules of Civil Procedure, Rule 4, nor is its chief health official. In this connection defendant contends that plaintiff has standing to institute a suit similar to the instant action in the federal courts of Louisiana which may then be consolidated with this action under the rules for multi-district legislation, or that this Court can coercively require that step by dismissing this suit until plaintiff institutes a companion suit in Louisiana. Plaintiff argues that relief can be accorded without representation by Louisiana and without prejudice to that state. The Court agrees and finds that neither the State of Louisiana nor its chief health official is an indispensable party under Rule 19, and that this Court can arrive at a complete adjudication on the merits

of this action in the absence of Louisiana or its appropriate official as a party.

### Stipulations of Facts

The parties introduced into the record a Stipulation of Facts to which are appended various documents, and an Amended Stipulation, also with appended documents. The facts are accepted by the Court as true and are digested as follows:

A & P is engaged in the processing of dairy products at its Kentwood, Louisiana, plant for delivery to its retail stores. The plant now supplies A & P grocery stores in the Louisiana market. A & P has been seeking a permit to enter the Mississippi market in order to supply its 38 retail outlets in Mississippi, on which it pays large amounts of taxes to Mississippi. A & P employs 1700 Mississippi residents in these outlets with an annual payroll of over $4,000,000.00. In an affidavit attached to the first stipulation, J. Y. Brashear, Vice President and General Manager, New Orleans Division of A & P, stated that of the 105 dairy farms from which A & P purchases raw milk for processing at the Kentwood plant, 99 are located in the State of Mississippi. Plaintiff's Kentwood processing plant received an inspection according to Louisiana quality and sanitation standards by the Louisiana Department of Health, Division of Milk and Dairy Products, on January 26, 1972 which yielded scores as follows: plant—100%; producer—94.-86%; and pasteurized milk—97.43%. By the amended stipulation, a more recent inspection in 1973 revealed the following scores: plant—98%; producer —93.62%; and pasteurized milk—95.-80%. The defendant is charged with enforcing Section 11 of the Mississippi State Board of Health "Regulation Governing the Production and Sale of Milk and Milk Products," the entire section being as follows:

"Milk and milk products from points beyond the limits of routine inspection of the State of Mississippi or its police jurisdiction, may be sold in the State of Mississippi or its police jurisdiction, provided they are produced, pasteurized and labeled under regulations which are substantially equivalent to this Regulation and have been awarded an acceptable milk sanitation compliance rating of 90 percent or above made by a state milk sanitation rating officer certified by the U.S. Public Health Service, and Provided further, that the regulatory agency who has jurisdiction accepts Grade A milk and milk products produced and processed in Mississippi on a reciprocal basis. The health authority is authorized to require and conduct laboratory analysis and investigations to determine if the milk and milk products are in compliance with this Regulation."

Plaintiff has requested from defendant a permit to deliver its milk processed in the Kentwood plant to its stores in Mississippi. Defendant has refused to certify plaintiff on the ground that Louisiana has failed to enter into a reciprocity agreement with Mississippi, pursuant to Section 11. A letter dated September 5, 1972, from Clinton Van Devender, Supervisor, Milk Control Program, Mississippi Board of Health to an A & P official, advised that a signed "Certificate of Reciprocity" was required. The letter and a reciprocity certificate form are exhibits to the stipulation. A letter from the State Health Officer of the Louisiana Department of Health to A & P, dated August 22, 1972, an exhibit, acknowledged that no reciprocity agreement exists between Louisiana and Mississippi pertaining to reciprocal sanitation inspections regarding milk, nor with any other state. The letter also stated: "At the present we are not receiving out-of-state *processed* milk from Mississippi, . . . . because the milk does not meet our standards." Further stipulated was that in the testimony of Clinton Van Devender, who testified at the preliminary hearing, Mr. Van Devender explained that the reason

for the reciprocity agreement is that, in its absence, Mississippi officials have no way of knowing whether or not the Kentwood plant meets Mississippi health standards or not. He conceded that he had seen the inspection made of the Kentwood plant as reported on a Department of Health, Education and Welfare, Public Health Service, Food and Drug Administration form, and that the Kentwood plant and its processed milk would be acceptable to defendant, because the Louisiana regulations were substantially equivalent within the meaning of Section 11, and thus the only additional requirement is a reciprocity agreement from Louisiana. He also identified a list of states with which Mississippi has reciprocity agreements. Identified by asterisk are four plants in Louisiana and two plants in Alabama, whose processed milk enters into Mississippi, although Mississippi has no reciprocity agreement with Alabama or Louisiana. The only explanation offered on the list is that these plants were moving milk into Mississippi before Section 11 was adopted. A transcript of Van Devender's testimony is attached to the stipulation in which he confirmed the above exceptions to Section 11. Further in the stipulation the parties agreed that if plaintiff complied with Section 11 by furnishing a "Certificate of Reciprocity" and *otherwise* complied with Mississippi health standards, plaintiff can market in its Mississippi retail outlets the milk processed in its Kentwood plant. (Underscoring added). The parties agreed that the difference between what plaintiff pays to processors outside the State of Mississippi for milk which plaintiff stocks in its Mississippi stores and the cost of what plaintiff can produce for itself amounts to $195,700 per annum, this statement appearing in the uncontested affidavit of plaintiff's New Orleans Division Treasurer, who also averred the presence of an actual market in Mississippi, the affidavit being attached to the stipulation.[1] The parties

agreed that Mississippi officials inspect each dairy farm, milk hauler, milk plant, receiving station and transfer station whose milk or milk products are intended for human consumption within the state or its police jurisdiction in the manner prescribed in Sections 5 and 6 of the Mississippi milk regulation, these sections being an exhibit to the stipulation. The Mississippi milk and milk product quality standards appearing in Section 7 of the regulations are attached as an exhibit. Louisiana's milk quality standards contained in Chapter V (Milk, Milk Products and Manufactured Milk Products Regulations) of the Sanitary Code of Louisiana are an exhibit, as well as Mississippi's Milk Plant Inspection Report and Dairy Farm Inspection Report forms, a list of sources of "Grade A Milk and Milk Products Sold in Mississippi," and an excerpt from the "Sanitation Compliance and Enforcement Ratings of Interstate Milk Shippers", published by the United States Department of Health, Education and Welfare, on April 1, 1972, containing the ratings of interstate milk shippers from Louisiana, and which reflects that the compliance rating of plaintiff's Kentwood plant in 1971 had a plant rating of 100% and a pasteurized milk rating of 98%. By a supplemental stipulation of facts, a full copy of Mississippi's "Regulation Governing the Production and Sale of Milk and Milk Products," adopted by the Mississippi State Board of Health on December 17, 1967, and all amendments thereto, is made a part of the record. Added as additional exhibits are amendments to Chapter V of Louisiana's milk regulations, a copy of the Louisiana State Department of Health "Pasteurization Plant Inspection Form," a copy of a letter of November 14, 1973, from the head of the Louisiana Division of Milk and Dairy Products to plaintiff showing the results of a 1973 inspection of the Kentwood plant, reported above, and another excerpt from the 1973 "Sanitation Compliance and Enforcement Ratings of

---

1. Obviously furnished in view of the earlier findings that plaintiff failed to present evidence of irreparable injury at the hearing for a preliminary injunction.

Interstate Milk Shippers," published by the U.S. Department of Health, dated October, 1973, reflecting the ratings of interstate milk shippers from Louisiana, including a rating of the Kentwood plant in 1972 as: plant—100%, and pasteurized milk—97%.

The court has familiarized itself with the agreed to stipulations of fact, all the exhibits of record, and the parties' argument, both oral and by brief.

Plaintiff, admitting that it has no standing or power to demand that Louisiana enter into a reciprocity agreement with Mississippi, nevertheless claims that the stipulated facts show without dispute that plaintiff has fully complied with all health related requirements of the Mississippi milk regulation, and that the refusal of the Mississippi authorities to issue plaintiff a permit to distribute its processed milk from plaintiff's Kentwood plant across the state line to plaintiff's retail outlets in Mississippi, in the absence of a "Certificate of Reciprocity" executed by the appropriate Louisiana official, which certificate plaintiff, without fault, has been unable to secure, interferes with the exclusive power of the Congress "to regulate Commerce . . . . among the several States", in violation of the thus quoted Commerce Clause. Plaintiff insists that the evidence clearly establishes that defendant's insistence on a certification of reciprocity is the sine qua non, unrelated to health standards, for the admittance of plaintiff's otherwise acceptable milk, pointing to the fact that defendant concedes that it does not deny the entry of milk from four Louisiana processors which were importing milk into Mississippi prior to the adoption of Section 11, and which are permitted to continue despite the lack of certification. Plaintiff concedes that Mississippi's exercise of its police power may require that out-of-state milk processors meet Mississippi health and sanitation standards, and that Mississippi may issue regulations governing same, but that such regulations may not be a subterfuge by which

the health agency would place the state in economic isolation, relying on the concepts of law established in Polar Co. v. Andrews, 375 U.S. 361, 84 S.Ct. 378, 11 L.Ed.2d 389; Dean Milk Co. v. City of Madison, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329; H. P. Hood & Sons v. DuMond, 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865; and Baldwin v. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032. All of these cases stem from disputes between the exclusive authority of the Congress to regulate interstate commerce without interference from the states, and the federally recognized rights of a state's exercise of its police powers designed to protect the health of its citizens, particularly with regard to milk because of its nutritional importance and susceptibility to contamination.

In Baldwin v. Seelig, supra, the Surpeme Court said: "It is the established doctrine of this court that a state may not, in any form or under any guise, directly burden the prosecution of interstate business." And on page 527, 55 S. Ct. on page 502: "What is ultimate is the principle that one state in its dealings with another may not place itself in a position of economic isolation. . . . Neither the power to tax nor the police power may be used by the state of destination with the aim and effect of establishing an economic barrier against competition with the products of another state or the labor of its residents." In *Baldwin* the court considered the New York Milk Control Act of 1933 which set up a system of minimum prices to be paid by dealers to producers. A part of the Act extended protective prices to that part of the milk supply which came from other states. The Court struck down the act finding that it is one thing for a state to exact adherence by an importer to fitting standards of sanitation before his product may be sold in the state's market, but it is a very different thing to establish a price scale for use in other states and to bar the sale unless the scale has been observed.

In H. P. Hood & Sons, Inc. v. Du-Mond, supra, a Massachusetts milk distributor applied for a license for an additional plant in New York under an agricultural marketing statute. The application was denied on the grounds that the proposed expansion would reduce the supply of milk for local markets and would result in destructive competition in a market already adequately served. The New York law was struck down on the grounds that a state may not promote its own local economic advantages by curtailing the volume of interstate commerce. Mr. Justice Jackson, writing for the Court, said:—Production and distribution of milk are so intimately related to public health and welfare that the need for regulation to protect those interests has long been recognized and is, from a constitutional standpoint, hardly controversial." But, in referring to Baldwin v. Seelig as relevant to *Hood*, he further said: "In neither case is the measure supported by health or safety considerations but solely by protection of local economic interests, such as supply for local consumption and limitation of competition."

Dean Milk Co. v. Madison, supra, involved part of a city ordinance making it unlawful to sell milk unless pasteurized at a plant within five miles of the center of Madison, Wisconsin, and another section prohibiting the receipt, storage or sale of milk unless from a source of supply possessing a permit issued after inspection by Madison officials, who were expressly relieved from inspection twenty-five miles beyond the center of the city. Mr. Justice Clark, in striking down the ordinance, said: "But this regulation, like the provision invalidated in Baldwin v. G. A. F. Seelig, Inc., supra, in practical effect excludes from distribution in Madison wholesome milk produced and pasteurized in Illinois. . . . In thus erecting an economic barrier protecting a major local industry against competition from without the State, Madison plainly discriminates against interstate commerce. This it cannot do, even in the exercise of its unquestioned power to protect the health and safety of its people, if reasonably nondiscriminatory alternatives, adequate to conserve legitimate local interests, are available." The Court found two reasonable and adequate alternatives, saying that if the City of Madison preferred to rely on its own officials for inspection of distant milk sources, such inspection is readily open to it without hardship for it could charge the actual and reasonable cost to the importing producers and processors. The second alternative grew out of the fact that the Illinois producer's milk was processed in plants inspected by the public health authorities of Chicago under the Chicago ordinance which adopted the rating standards recommended by the United States Public Health Service. In a footnote to *Dean*, Section 11 of the U.S. Public Health Service Milk Ordinance of 1939 is quoted verbatim, with the following comment from the Public Health Service Code: "It is suggested that the health officer approve milk or milk products from distant points without his inspection if they are produced and processed under regulations equivalent to those of this ordinance, and if the milk or milk products have been awarded by the State control agency a rating of 90 percent or more on the basis of the Public Health Service rating method." Interestingly enough Section 11 of the Mississippi regulation, but for the reciprocal clause, is identical in every material aspect to Section 11 of the U. S. Public Health Service Ordinance.

Polar Co. v. Andrews, supra, also relied on by plaintiff, citing Baldwin v. Seelig, supra, Hood & Sons v. DuMond, supra, and Dean Milk Co. v. Madison, supra, as controlling, held that the Florida Milk Control Act which excluded out-of-state milk from a major portion of the state's market could not be justified as an economic measure to protect the welfare of local dairy farmers or as a health measure designed to insure the existence of a wholesome supply of milk. Further, the Court ruled that Florida has no power to prohibit the introduc-

tion within her territory of milk of wholesome quality acquired in another state.[2]

Defendant contends that the above referred to cases relied on by plaintiff are inapposite because the circumstances in each involved economic barriers, protectionist in design and result, and they all involved price and area discrimination which a willing out-of-state producer could not surmount by meeting other standards. With this contention, the Court agrees.

■ Also defendant insists that Section 11, both in intent and effect, creates reciprocal *standards of inspection* and not strict trade reciprocity. Attached to defendant's trial brief is a chart contrasting Louisiana's standards of inspection with those of Mississippi, the standards of both states being in evidence, which shows that the Mississippi standards are more stringent than that of Louisiana. Proceeding upon this conclusion, Mississippi, by waiving its stricter milk standards in favor of that of Louisiana, if Louisiana authorities will make the same commitment, is, by virtue of its Section 11, opening the milk trade with all other states, and for proof of this, points to the list of states with which Mississippi has reciprocal standards of inspection. This argument, of course, assumes that the Mississippi standards are stricter than those of Louisiana, despite the letter of August 22, 1972, from the Louisiana state health officer to plaintiff saying that Mississippi processed milk does not meet the standards of Louisiana. Nevertheless, the Court is satisfied that Section 11, insofar as it follows Section 11 of the U.S. Public Health Service Milk Ordinance, is a warranted exercise of Mississippi's police powers free of any constitutional infirmity. And, on its face, including the reciprocal inspection standards, Section 11 is within the permissible limits of state police powers even though it inci-

dentally or indirectly involves or burdens interstate commerce. See Milk Control Board v. Eisenberg Farm Products, 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752. The extent of the burden is found in the word "reciprocity," its ordinary meaning being "a mutual exchange of privileges." As long as Mississippi mutually exchanges standards of inspection with other states, there can be no burden on interstate trade. The fact that Mississippi has engaged and expects to continue to engage in reciprocity militates against invalidating Section 11. The problem here arises out of the fact that Louisiana has refused reciprocal standards of inspection. The Court has all along realized that no relief can be granted against Louisiana or its health officials in their absence as parties to the suit. Under Dixie Dairy Co. v. Chicago, D.C., 355 F.Supp. 1351, the right of either Louisiana or Mississippi to enforce its own standards, either through inspections at the source of the processed milk, although such may require out-of-state inspections, or through reciprocal agreements is unquestioned. Although this case also holds that no state may be forced to relinquish its local police power on the basis of reciprocity, it does not hold that a state cannot insist on reciprocity in lieu of out-of-state inspections. Mississippi may still insist on compliance with its own health and sanitation standards, and it may continue to waive its requirements as provided in Section 11. Accordingly, the Court declines to find that Section 11 is unconstitutional in placing an undue burden on interstate commerce.

■ During the course of this hearing no explanation was offered by defendant as to why it receives processed milk from producers in Alabama and Louisiana in the absence of a reciprocity agreement with those states except that processed milk from these sources was received before the adoption of Section 11 and continues to be received. No evi-

---

**2.** It could be reasoned that the offending state here is not Mississippi but Louisiana which has refused to issue plaintiff a certifi-

cate of reciprocity, and which caused the Court's request to explore whether or not Louisiana officials could be made a party.

dence was offered that Mississippi officials inspect this milk at its out-of-state source. According to the testimony of Van Devender, Mississippi adopted the reciprocity clause to avoid the expense of out-of-state inspections. The Court therefore assumes that Mississippi accepts the inspections and ratings of either Alabama or Louisiana officials, as the case may be. Plaintiff argues that for Mississippi to accept processed milk from four Louisiana processors without requiring a certificate of reciprocity, and, at the same time, deny plaintiff a permit in the absence of such certificate, is an unevenhanded, arbitrary action, depriving plaintiff of its right to equal protection. The Court disagrees. To rule otherwise, would be to hold that Mississippi could not, in the future, exercise its reciprocity clause with respect to processors in the States of Alabama and Louisiana. If the reciprocity clause could be said to be retaliatory in nature, the guilty party is Louisiana, not Mississippi.

An order may be submitted upholding the validity of Section 11 and dismissing plaintiff's suit. Let Court costs be taxed to the plaintiff.