HIGGINSON, Circuit Judge,
specially concurring:
I write separately to make two further observations.
First, the plaintiffs contend that the Ordinance is preempted by Congress’s exclusive occupancy of the fields of removal, harboring, and registration. In my view, the Supreme Court’s unanimous decision authored by Justice Brennan in DeCanas v. Bica, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976), forecloses this argument. The Ordinance regulates the ability of non-citizens to obtain rental housing, and Congress has not determined that the housing of non-citizens falls within its exclusive authority. See Chamber of Commerce of U.S. v. Whiting, — U.S. -, 131 S.Ct. 1968, 1985, 179 L.Ed.2d 1031 (2011) (holding that “[ijmplied preemption analysis does not justify a ‘freewheeling judicial inquiry into whether a state statute is in tension with federal objectives’ ”) (quoting Gade v. Nat’l Solid Wastes Mgmt. Assn., 505 U.S. 88, 111, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (internal quotation marks omitted)). The Supreme Court in DeCanas held that a California law forbidding employment to certain “alien[s] ... not entitled to lawful residence in the United States” was not field preempted, because there was no specific indication that Congress “intended to preclude even harmonious state regulation touching on ... the employment of illegal aliens.” 424 U.S. at 365, 357-58, 96 S.Ct. 933. Ten years later, Congress, seeing the need for “some form of [federal] employer sanctions ... if illegal migration is to be curtailed,”[1] enacted the Immigration Reform and Control Act of 1986 (IRCA), which expressly preempted conflicting state statutes.[2] Immigration Reform and Control Act of 1986, Pub.L. No. 99-603, 100 Stat. 3359.
Because no such comprehensive federal regulation has emerged, or been identified to us, that governs the housing of non-citizens present in the country contrary to law, I do not perceive that the Supremacy Clause acts as a “complete ouster of state power” in this area. DeCanas, 424 U.S. at 357, 96 S.Ct. 933. We presume that the historic police powers of the States are not “superseded ... unless that was the clear and manifest purpose of Congress.” Wyeth v. Levine, 555 U.S. 555, 565, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). Until Congress clearly intercedes, as it did with employment, DeCanas suggests that we not interfere with the political process and *561 “oust” state police powers as impliedly preempted. 424 U.S. at 357, 96 S.Ct. 933 (“[W]e will not presume that Congress, in enacting the [Immigration and Nationality Act], intended to oust state authority to regulate the employment relationship ... in a manner consistent with pertinent federal laws.”).[3]
Second, taking more guidance from Arizona, 132 S.Ct. at 2510 (“This opinion does not foreclose other preemption and constitutional challenges to the law as interpreted and applied after it goes into effect.”), I would point out that several other constitutional claims, under due process, equal protection, and the Privileges and Immunities and Commerce Clauses, were raised by the plaintiffs below but not reached by the district court. In particular, the Ordinance, inasmuch as it attempts to isolate Farmers Branch from a problem common to other states by burdening other localities with non-citizens illegally in the United States, may be invalid under the dormant Commerce Clause.[4] As Justice Cardozo wrote in Baldwin v. G.A.F. Seelig, Inc., “the peoples of the several states must sink or swim together.” 294 U.S. 511, 523, 55 S.Ct. 497, 79 L.Ed. 1032 (1935); see also Oregon Waste Sys., Inc. v. Dep’t of Envt’l Quality of the State of Or., 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994); South-Central Timber Dev., Inc. v. Wunnicke, 467 U.S. 82, 92, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984) (“The fact that the state policy ... appears to be consistent with federal policy — or even that state policy furthers the goals we might believe that Congress had in mind — is an insufficient indicium of congressional intent.”); Philadelphia v. New Jersey, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); Dean Milk Co. v. Madison, 340 U.S. 349, 354 n. 4, 71 S.Ct. 295, 95 L.Ed. 329 (1951) (dormant Commerce Clause applies to municipal as well as to state protectionism); Serv. Mach. & Shipbuilding Corp. v. Edwards, 617 F.2d 70, 73-76 (5th Cir.1980) (“The movement of persons falls within the protection of the commerce clause”).
For the above reasons, I add this special concurrence to the judgment of the court.

. U.S. Immigration Policy and the National Interest: The Final Report and Recommendations of the Select Commission on Immigration and Refugee Policy with Supplemental Views by Commissioners 65-66 (1981).

. IRCA contains a savings clause expressly preempting "any State or local law imposing civil or criminal sanctions ... upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens,” but excludes "licensing and similar laws” from the preemption clause. 8 U.S.C. § 1324a(h)(2). Notably, the Supreme Court recently held that an Arizona law allowing state courts to suspend or revoke an employer’s business license if the employer knowingly employed an “unauthorized alien” fell under IRCA's "licensing” exception and was therefore not preempted by IRCA. Whiting, 131 S.Ct. at 1978.

. Undoubtedly, there is complexity applying DeCanas to the field of "sub-federal immigration regulation." See generally Pratheepan Gulasekaram & Rose Cuison Villazor, Sanctuary Policies & Immigration Federalism: A Dialectic Analysis, 55 Wayne L.Rev. 1683, 1707-15 (2009).

. The dissent's endorsement of perceived police power authority to exclude fugitives only highlights the Ordinance's constitutional dubiety in this regard.