**FIRESIDE NISSAN, INC.**

v.

**Daniel P. FANNING, Director of Department of Transportation, State of Rhode Island.**

Civ. A. No. 92–0198B.

United States District Court, D. Rhode Island.

July 29, 1993.

new motor vehicle dealerships. Rhode Island General Laws, Section 31–5.1–4.2 requires a manufacturer to notify dealers "in the relevant market area" of its intention to establish an additional dealership. Existing retail dealers may then protest the action and the Rhode Island Department of Transportation is then required to hold a hearing after which the Department will determine if good cause has been established for not entering into an additional franchise. "Relevant market area" is defined as "the area within a radius of twenty (20) miles around an existing dealer or the area of responsibility defined in the franchise, whichever is greater." R.I.Gen.Laws § 31–5.1–1(J) (Supp.1992).

Nissan Motor Corporation in U.S.A. gave notice of its intent to establish a dealership in Smithfield, Rhode Island. Fireside Nissan, Inc. (Fireside) is located in North Attleboro, Massachusetts, approximately two miles from the Rhode Island border and within twenty miles of Smithfield, Rhode Island. Fireside sells new Nissan automobiles and used automobiles. In addition, Fireside provides service and parts for automobiles.

Fireside received notice of Nissan's intent to establish the new dealership and filed a protest with the Department. The parties have stipulated that at the hearing on the proposed dealership, the Department determined that, as an out-of-state dealer, Fireside could not present witnesses or evidence at the hearing.[1] After the hearing, the Department determined that good cause existed for the establishment of the Smithfield dealership. Fireside contends that its exclusion from the hearing is unconstitutional.

Ronald W. Del Sesto, Updike, Kelly, Spellacy & Del Sesto, Providence, RI, for plaintiff.

J. Ryder Kenney, Legal Counsel to the Director, Providence, RI, for defendant Fanning, Director of Dept. of Transp.

Gerald C. De Maria, Lawrence McCarthy, Higgins Cavanaugh & Cooney, Providence, RI, for intervenor Nissan Motor Corp. in U.S.A.

John D. Biafore, Goldman & Biafore, Providence, RI, for intervenor Nissan of Smithfield, Inc.

## OPINION

FRANCIS J. BOYLE, Senior District Judge.

This case involves the constitutionality of the provisions of Rhode Island's Motor Vehicle Code Act governing the establishment of

## FACTS

The following facts are based on admissions submitted by the parties. On March 28, 1991, Nissan provided written notice, by certified mail, to Fireside of its intent to establish a new motor vehicle dealership in Smithfield, Rhode Island. On April 12, 1991, Fireside filed with the Department a protest

1. This determination was actually made by the "Dealers Hearing Board" established under the regulations adopted by the Department. No issue has been raised in this court concerning the validity of this procedure.

to the establishment of the new motor vehicle dealership in Smithfield. In addition, Viking Pontiac–Cadillac–Nissan, Inc. of East Providence, Rhode Island (Viking), Ocean State Nissan, Inc. of Warwick, Rhode Island (Ocean State), and Knight's Garage, Inc. of West Warwick, Rhode Island (Knight) filed similar protests.

Thereafter, on October 21, 1991, the Department promulgated proposed "Rules and Regulations Regarding Dealers, Manufacturers and Rental Licenses." Section XI of the proposed rules and regulations provided:

> Relevant Market Area as defined by these Rules pertains only to protesters in the State of Rhode Island. The Department may in its discretion allow a dealer from outside the State, and who is otherwise qualified, to be heard, in the form of a written or verbal statement on the issue before it. In no event will an out-of-state dealer be allowed to cross examine or place in evidence testimony or documents.

On November 4, 1991, Fireside submitted a written protest of the proposed rules. On December 12, 1991, at a public hearing regarding the proposed rules and regulations, Fireside objected to the proposed definition of relevant market area in that it excluded dealerships within the statutory twenty miles that were not located within Rhode Island. On January 23, 1992, the Department issued its final "Rules and Regulations on Dealers, Manufacturers and Rental Licenses" without adopting the proposed definition of relevant market area.

On February 13, 1992, Fireside received notice, by certified mail, that the Department was scheduling a hearing on Nissan's application for a dealer license for the Smithfield location on April 2, 1992 at 9:30 a.m. The location of the proposed dealership is within ten (10) miles of Fireside. At the April 2, 1992 hearing, Nissan moved to exclude Fireside because it was an out-of-state dealer. The Department, acting through the Rhode Island Dealer's License and Regulations Office, determined Fireside lacked standing and excluded Fireside from presenting witnesses or evidence at the hearing.

The proposed new dealership is within a twenty-mile radius of Viking, Ocean State and Knight. Viking, Ocean State and Knight, all located within the state of Rhode Island, were allowed to participate at the hearing and to present evidence. On April 9, 1992, the Department announced that Nissan had established that good cause existed for the establishment of the Smithfield dealership. On April 21, 1992, the Department issued an amended decision with the same conclusion.

On April 9, 1992, Fireside commenced this action in this court naming Daniel Fanning, Director of the Department of Transportation as the defendant. Fireside requests a declaratory judgment finding the Department's interpretation of Section 31–5.1–4.2 excluding Fireside from the hearing violates the commerce clause, the privileges and immunities clause, due process and equal protection of the Fourteenth Amendment. Fireside also seeks a permanent injunction restraining the Department from interpreting Section 31–5.1–4.2 to preclude Fireside from participating in any proceeding before the Department concerning any application to establish a new motor vehicle dealership in the State of Rhode Island that is within Fireside's market area. In addition, Fireside seeks a temporary restraining order and a preliminary injunction enjoining the defendant from acting on the application of Nissan of Smithfield, Inc. During the course of the proceedings, Nissan Motor Corporation in U.S.A. and Nissan of Smithfield, Inc. moved to intervene. On June 16, 1992, both motions to intervene were granted.

At the outset, Defendant–Intervenor Nissan questions whether this case is properly before this court. To support its contention, Nissan raises several procedural impediments. Nissan's arguments are not persuasive.

■ First, Nissan argues that Fireside has failed to exhaust its administrative remedies, therefore its complaint should be dismissed. This contention fails. The Supreme Court has stated that

> [i]f, ... an administrative proceeding might leave no remnant of the constitutional question the administrative remedy plainly should be pursued. But where the

only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief sought as the only effective way of protecting the asserted constitutional right.

*Public Utilities Comm'n v. United States,* 355 U.S. 534, 539–540, 78 S.Ct. 446, 450–451, 2 L.Ed.2d 470 (1958). Fireside has raised constitutional issues concerning the Department's interpretation and application of a state statute. Further review by the Department will not resolve the constitutional issues raised by Fireside. Therefore, Fireside need not exhaust its administrative remedies.

■ Next, Nissan argues, that before filing the present action, Fireside had filed claims in Providence Superior Court. Fireside's original state court complaint sought to have the proposed Rule XI declared null and void. After the Department adopted its rules and regulations, Fireside supplemented its complaint. In its supplemental complaint, Fireside requested that the court interpret the Department's rules to determine if Fireside would be eligible to protest such a proposed dealership and enjoin the Department from conducting hearings until it adopted rules in conformity with Rhode Island's Administrative Procedures Act, R.I.G.L. § 42–35. After filing its complaint in this court, Fireside again amended its state court complaint. In its amended complaint, Fireside requested that the court declare the Department's actions excluding Fireside from the April 2, 1993 hearing unlawful because, inter alia, they violated state law; that the Department's actions adopting its rules be declared void; that the Department's actions barring Fireside from presenting evidence be declared unlawful; that the license issued by the Department be declared void and be revoked; that the Department be permanently enjoined from excluding Fireside from participating in hearings that involve proposed dealerships within Fireside's relevant market area and that Fireside be awarded costs. Because of this pending state action, Nissan contends that this court should abstain on the basis of the *Younger* abstention doctrine.

■ Under *Younger,* a federal district court should abstain from ruling whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests and substantive proceedings on the merits have not yet taken place in the federal court. *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 237–238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984). The *Younger* rule "is designed to 'permit state courts to try state cases free from interference by federal courts,' particularly where the party to the federal case may fully litigate his claim before the state court." *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975) (quoting *Younger v. Harris,* 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971)).

■ Abstention is not appropriate. The Supreme Court has advised that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Ankenbrandt v. Richards,* — U.S. —, —, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). Because the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them" abstention is permissible only in exceptional circumstances. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. at 817, 96 S.Ct. at 1246; *Burns v. Watler,* 931 F.2d 140, 145 (1st Cir. 1991). "Indeed, the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. at 815 n. 21, 96 S.Ct. at 1245 n. 21 (citing *Burford v. Sun Oil Co.,* 319 U.S. 315, 318, 63 S.Ct. 1098, 1099, 87 L.Ed. 1424 (1943)). In determining whether to abstain, "only the clearest of justifications will warrant dismissal." *Id.,* 424 U.S. at 819, 96 S.Ct. at 1247.

Fireside raises the issue of the constitutionality of a specific Rhode Island statute. This question raises different issues than the state proceedings. The state proceedings focus on the appropriateness of the Department's rules and regulations under state law. In this case, abstention is not warranted

because a determination of the constitutionality of this statute will not interfere with or enjoin the pending proceeding in state court. *See Rivera–Puig v. Garcia–Rosario*, 983 F.2d 311, 319 (1st Cir.1992).

■ Nissan's final argument is that the issuance of the license has mooted Fireside's claim. This argument fails. The Supreme Court has stated that:

[j]urisdiction, properly acquired, may abate if the case becomes moot because (1) it can be said with assurance that 'there is no reasonable expectation' ... that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the violation.

*County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citations omitted). The constitutional deprivations Fireside alleges could recur and nothing has occurred that will avoid the effects of the possible violation.

■ The first issue that must be addressed is whether the statute applies to dealers such as Fireside. In *BMW Stores, Inc. v. Peugeot Motors of America*, 860 F.2d 212 (6th Cir.1988) the Sixth Circuit dealt with a similar issue. In *BMW*, the plaintiff was an Ohio dealership protesting the establishment of a franchise less then ten miles away in Kentucky. Under Kentucky law, any established new motor vehicle dealership may file a protest with the licensor concerning the establishment of a new motor vehicle dealership within a ten (10) mile radius around an existing dealership. The *BMW* court determined that the statute did not apply to the Ohio dealership. *Id.* at 213. The *BMW* court reasoned that the Kentucky legislature did not enact the statute with the intent of benefiting out-of-state dealerships. The court based its conclusion on an affidavit by the Executive Director of Kentucky's Motor Vehicle Commission stating the Kentucky statute would not apply to an out-of-state protester, the policy statement of the statute declaring that the purpose of regulating dealerships and distributors doing business in the state was to "protect and preserve the investments and properties of citizens" of Kentucky, and principles of statutory construction concerning extraterritorial application of state statutes. *Id.* at 215.

Defendants argue that the Department's decision to exclude Fireside was proper based on the holding of *BMW*. Although recognizing *BMW*'s similarity, Fireside argues that the statutes are based on two distinct public policies. Fireside notes that the stated purpose of Rhode Island statute is to protect the interests of Rhode Island consumers. In Fireside's view, the law protects Rhode Island consumers and including Fireside in the licensing hearing serves that purpose.

Before addressing the statutes applicability to Fireside, Rhode Island's statutory scheme governing for the establishment of new motor vehicle dealerships must be reviewed. Section 31–5.1–4.2 provides:

(a) In the event that a manufacturer seeks to enter into a franchise establishing an additional new motor vehicle dealership ... within or into a relevant market area where the same line make is then represented, ... the manufacturer shall in writing by certified mail first notify the department ... and each new motor vehicle dealer in such line make in the relevant market area of the intention to establish an additional dealership ... within or into that market area. Within thirty (30) days of receiving such notice or within thirty (30) days after the end of any appeal procedure provided by the manufacturer, any such new motor vehicle dealership may file with the department a protest to the establishing ... of the new motor vehicle dealership. When such protest is filed, the department shall inform the manufacturer that a timely protest has been filed, and that the manufacturer shall not establish ... the proposed new motor vehicle dealership until the department has held a hearing, nor thereafter, until the department has determined that there is good cause for not permitting such new motor vehicle dealership.

R.I.Gen.Laws § 31–5.1–4.2 (Supp.1992). Relevant market area is defined as "the area within a radius of twenty (20) miles around an existing dealer or the area of responsibili-

ty defined in the franchise, whichever is greater." R.I.Gen.Laws § 31–5.1–1(J) (Supp.1992). Throughout Title 31 of the Motor Vehicle Code Act, the term "dealer" is defined as "[e]very person engaged in the business of buying, selling, or exchanging vehicles of a type required to be registered hereunder and who has an established place of business for such purpose in this state." R.I.Gen.Laws § 31–1–19 (1982). A new motor vehicle dealer is defined as:

> [a]ny person engaged in the business of selling, offering to sell, soliciting or advertising the sale of new motor vehicles and who holds, or held at the time a cause of action under this chapter accrued, a valid sales and service agreement, franchise or contract, granted by the manufacturer or distributor for the retail sale of said manufacturer's or distributor's new motor vehicles.

R.I.Gen.Laws § 31–5.1–1(C) (Supp.1992).

In determining whether good cause exists for not entering into an additional franchise for the same line make, the department is to consider existing circumstances, such as,

> (1) Permanency of the investment of the existing new motor vehicle dealer(s) in the community;
>
> (2) Whether the new motor vehicle dealers of the same line make in that relevant market area are providing adequate consumer care ... which shall include the adequacy of motor vehicle sales and service facilities, equipment, supply of motor vehicle parts, and qualified service personnel;
>
> (3) Whether there is reasonable evidence that after the granting of the new motor vehicle dealership, that the market would support all of the dealerships of that line make in the relevant market area;
>
> (4) Consequently, whether it injurious to the public welfare for an additional new motor vehicle dealership to be established.

R.I.Gen.Laws § 31–5.1–4.2(b) (Supp.1992).

Fireside contends that it satisfies the statutory definition of a new motor vehicle dealer and that its place of business is within 10 miles of the proposed dealership, therefore it is within the relevant market area of the proposed dealership. Although this contention may be literally accurate the central issue remains whether the Rhode Island legislature intended the statute to apply to out-of-state dealers such as Fireside. No documents are available regarding the statute's legislative history. This court follows the reasoning of the *BMW* in finding that the Rhode Island legislature did not intend the statute to apply to out of state dealers.

Unlike *BMW*, the Rhode Island statute does not have policy statement defining its purpose. However, the provision of the Rhode Island statute entitled "Application of chapter," provides that:

> [a]ny person who engages directly or indirectly in purposeful contacts within this state in connection with the offering or advertising for sale or has business dealings with respect to a motor vehicle within the state shall be subject to the provisions of this chapter and shall be subject to the jurisdiction of the courts of this state, upon service of process in accordance with the provisions of the general laws.

R.I.Gen.Laws § 31–5.1–2 (1982). This provision indicates that, in promulgating this legislation, the Rhode Island legislature intended to target activities which occur within the state of Rhode Island.

The court's determination that the statute was not intended to apply to out-of-state dealers is supported by the Rules and Regulations established by the Department of Transportation pursuant to Sections 31–5, 31–5.1, 42–35–3(b) and 42–35–4(b)(2) of the Rhode Island General Laws. These regulations state their purpose is:

> (a) ... to protect the interests of the public when dealing with motor vehicle dealers in Rhode Island ... (b) ... to implement the provisions of Sections 31–5 and 31–5.1 regarding the issuance, suspension and/or revocation of such licenses as well as the regulation of business practices among the businesses seeking or holding those licenses.

Again, the regulations focus on activity occurring within Rhode Island and performed by businesses seeking or holding Rhode Island dealers licenses. Fireside is not located

within Rhode Island nor does it hold a dealer's license in Rhode Island.

Fireside argues that the rejection of Section XI of the proposed regulations indicates that no distinction between in-state and out-of-state dealers was intended. Section XI of the proposed regulations provided that "[i]n no event will an out-of-state dealer be allowed to cross examine or place in evidence testimony or documents." Principles of statutory construction, however, support the conclusion that the statute was not intended to apply to Fireside. *See BMW Stores, Inc. v. Peugeot Motors of America,* 860 F.2d at 215. "Legislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction." *Sanberg v. McDonald,* 248 U.S. 185, 195, 39 S.Ct. 84, 86, 63 L.Ed. 200 (1918). The Rhode Island Legislature has not indicated or expressed an intent that the statute is to apply outside the state of Rhode Island thus it is presumed to apply exclusively within Rhode Island.

## DISCUSSION

Fireside requests a preliminary injunction enjoining the Department from acting on the application of Nissan of Smithfield, Inc. Fireside alleges that the Department's interpretation of its Rules and Regulations violates the commerce clause, the privileges and immunities clause, and Fireside's rights to due process and equal protection under the Fourteenth Amendment.

Preliminary Injunction Standard

A party seeking a preliminary injunction has the burden to exhibit:

(1) That it does not have an adequate remedy at law and will suffer irreparable harm before the case can be litigated on the merits if the injunction is not granted;

(2) That such harm outweighs any harm that the adverse party will suffer if the injunction is granted;

(3) That it is likely to ultimately succeed on the merits of its claim; and

(4) That the requested injunction will not adversely affect the public interest. *Stephen D. DeVito, Jr. Trucking v. Rhode Island Solid Waste Management Corp.,* 770 F.Supp. 775, 778 (D.R.I.1991), *aff'd,* 947 F.2d

1004 (1st Cir.1991) (citing *Collazo Rivera v. Torres Gaztambide,* 812 F.2d 258, 259 (1st Cir.1987); *Planned Parenthood League of Mass. v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981)). The court will apply this standard to each of Fireside's constitutional claims.

### I. Irreparable Harm to Plaintiff

■ Fireside argues that the Department's interpretation of its Rules and Regulations has caused irreparable harm to Fireside by depriving it of its constitutional rights. As discussed later in this opinion, this court finds the actions of the Department did not deprive Fireside of its constitutional rights. In addition, Fireside contends that the April 9, 1992 issuance of a new motor vehicle dealership to Nissan of Smithfield further injured Fireside. Fireside argues that if allowed to participate in the April 2, 1992 hearing it would have presented evidence relevant to the statutory criteria. For example, Fireside would have presented evidence of the percentage of its sales to Rhode Island customers, the percentage of its service customers from Rhode Island, the amount it spends on advertising in Rhode Island, and its customer satisfaction rating. In addition, Fireside would have presented evidence that the additional dealership would cause significant financial harm to Fireside. Fireside believes that such evidence would rebut the Department's findings. Having found that the Rhode Island legislature did not intend this statute to apply to Fireside, this argument fails. In enacting this statute, the Rhode Island legislature's intended to regulate activities and entities within the state. Therefore, the evidence Fireside hoped to introduce detailing the possible effect of the statute on out-of-state entities was not relevant to the Department's inquiry. The Department's refusal to allow Fireside to participate in the April 2, 1992 hearing did not injure Fireside because when the legislature created the hearing process it never intended that a dealer such as Fireside would be a participant.

### II. Harm to the Defendants and III. Public Interest

The harm to the defendant Department and the public interest are closely related,

therefore they will be addressed together. The statute and process under scrutiny in this case involves the establishment of automobile dealers within the State of Rhode Island. As noted earlier, the Department's purpose in promulgating rules and regulations regarding dealer, manufacturer and rental licenses was to protect the interests of the public when dealing with motor vehicle dealers in Rhode Island as well as to regulate business practices among businesses holding Rhode Island dealers licenses.

Other courts have also interpreted the interests that statutes such as the Rhode Island statute serve. In *New Motor Vehicle Board of California v. Orrin W. Fox Co.*, 439 U.S. 96, 100–101, 99 S.Ct. 403, 407–408, 58 L.Ed.2d 361 (1978), the Supreme Court determined that statutes of this type are aimed at protecting retail car dealers from "perceived abusive and oppressive acts by the manufacturers." In upholding a similar California statute, the Supreme Court noted that statutes which prescribe conditions under which new or additional dealerships may be permitted in the territory of an existing dealership serve to promote fair dealing and protect small business. *Id.* at 102 n. 7, 99 S.Ct. at 408 n. 7. In upholding a similar Massachusetts statute against a commerce clause challenge, the Massachusetts Supreme Judicial Court noted that the legislation was directed at the "time-honored State purpose of preserving a sound competitive market free of the domination of oligopolists at the top of a vertical chain of manufacture, distribution, and sale." *Tober Foreign Motors v. Reiter Oldsmobile*, 376 Mass. 313, 381 N.E.2d 908, 913 (1978). The *Tober* court noted that statutes of this type seek to combat the potential unfairness where a new franchise is granted near an established dealer creating a situation where

> having invested in his dealership, [an established] dealer who has displeased the manufacturer, or who simply appears dispensable, finds his business turned into a losing venture overnight by the award of a new franchise around the corner, and, it may be, without any practical benefit to, or, indeed, with negative effects on the buying public.

*Id.* 381 N.E.2d at 912. The statute at issue effects the State's ability to protect its consumers, ensure a free competitive market and regulate its businesses. The State's ability to protect these interests directly affects the public interest.

In determining whether or not to grant the injunction, this court must consider the harm to the intervenors. Nissan argues that if the injunction is granted it will lose market share, customer allegiance and the dealer it has approved for Smithfield. Nissan further argues that the proposed Smithfield dealer will be harmed because they have invested a substantial amount of money and time in preparing for this dealership. Thus, the harm to the defendants and the public interest weigh toward the denial of the preliminary injunction.

## IV. Likelihood of Success on the Merits

### A. Commerce Clause Claim

Although Section 31–5.1–4.2 on its face appears to regulate evenhandedly, Fireside argues that the Department's interpretation of the statute constitutes economic protectionism. Fireside contends that the practical effect of the statute is to benefit and protect in-state dealerships at the expense of out-of-state dealers. According to Fireside, the Department's interpretation has stripped it of the competitive advantages it has garnered within the Rhode Island market. This argument fails.

The Commerce Clause of the United States Constitution provides that "Congress shall have the power ... to regulate Commerce ... among the several states." U.S. Const. art. I, § 8. The Commerce Clause also impacts a state's ability to regulate interstate commerce. Thus, the Commerce Clause is applicable "[n]ot only as an authorization for congressional action, but also, even in the absence of a conflicting statute, as a restriction on permissible state regulation." *Hughes v. Oklahoma*, 441 U.S. 322, 326, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250 (1979). The Commerce Clause does not render a state powerless to enact valid regulations which may incidentally burden interstate commerce. "The limitation imposed by

the Commerce Clause 'is by no means absolute,' and 'the States retain authority under their general police powers to regulate matters of "legitimate local concern," even though interstate commerce may be affected.'" *Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1985) (quoting *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 35, 100 S.Ct. 2009, 2014, 64 L.Ed.2d 702 (1980)).

 To determine if a state has imposed an undue burden on interstate commerce the Supreme Court has applied a three part test. A court must decide:

(1) whether the challenged statute regulates evenhandedly with only "incidental" effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect;

(2) whether the statute serves a legitimate local purpose; and if so,

(3) whether alternative means could promote this local purpose as well without discriminating against interstate commerce.

*Hughes v. Oklahoma*, 441 U.S. at 336, 99 S.Ct. at 1736. The Supreme Court has determined that state statutes that burden interstate commerce only incidentally violate the Commerce Clause only if the burdens they impose on interstate commerce are "clearly excessive in relation to the putative local benefits." *Maine v. Taylor*, 477 U.S. at 138, 106 S.Ct. at 2447 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970)). If the state statute discriminates against interstate commerce "either on its face or in practical effect," the State must demonstrate that the statute "serves a legitimate local purpose," and that this purpose could not be served as well by available nondiscriminatory means. *Id.* (quoting *Hughes v. Oklahoma*, 441 U.S. at 336, 99 S.Ct. at 1736). "When a state statute clearly discriminates against interstate commerce, it will be struck down, unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Wyoming v. Oklahoma*, —— U.S. ——, ——, 112 S.Ct. 789, 800, 117 L.Ed.2d 1 (1992) (citations omitted). However, if a state statute constitutes simple economic protectionism, a virtual per se rule of invalidity applies. *Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978).

In support of its contention, Fireside relies on a variety of Supreme Court precedents invalidating statutes on the basis of economic protectionism. In *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951), the Supreme Court rejected a city ordinance regulating the sale of milk and milk products within Madison. The ordinance outlawed the sale of any milk as pasteurized unless it had been processed and bottled at an approved pasteurization plant within a radius of five miles from the central square of Madison. The *Dean* court determined that the practical effect of this ordinance was to exclude from distribution in Madison milk produced in Illinois and to erect an "economic barrier protecting a major local industry against competition from without." *Id.* at 354, 71 S.Ct. at 298. Fireside also relies on *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). In *Hunt*, the Supreme Court invalidated a North Carolina statute requiring all closed containers of apples sold or shipped in the state bear no grade other than a U.S. grade, thus prohibiting the display of Washington State grades. The *Hunt* court determined that the statute discriminated against Washington apples. The *Hunt* court concluded that the North Carolina statute discriminated against interstate commerce in three ways. Specifically, the statute increased the costs of doing business in North Carolina for Washington apple dealers without affecting the costs of local dealers, the Washington apple industry was stripped of the economic and competitive advantages it had earned through its own grading system, and the statute benefited local producers by preventing Washington state sellers from enjoying the market advantage achieved by their superior grading system. *Id.* at 351–352, 97 S.Ct. at 2446.

The fact that the Rhode Island statute provides certain intrastate dealers with the option of protesting a proposed new dealership license while not providing similar opportunities to out-of-state dealers is not eco-

nomic protectionism. This statute does not isolate the Rhode Island economy from other states, restrict the flow of imports to Rhode Island, exclude out-of-state goods from the Rhode Island market or increase costs to out-of-state dealers. In sum, the statute does not discriminate against interstate commerce on its face or in practical effect. The statute does not impact Fireside's ability to transact business in the Rhode Island market; it merely limits the number of individuals that may protest a new dealership license. Therefore, the Rhode Island statute does not unconstitutionally burden interstate commerce.

As previously discussed, there is no indication that the Rhode Island legislature intended the statute to cover out-of-state dealers such as Fireside. The Rhode Island statute permits only dealers who are within the relevant market and within Rhode Island to protest a new dealership license. In the present case, this court finds that the statute regulates evenhandedly with only incidental effects on interstate commerce. The statute regulates evenhandedly because out-of-state dealers are treated exactly the same as in-state dealers who are not located in the relevant market area. Applying the *Maine v. Taylor* test to the present case, our first inquiry is whether the statute serves a legitimate local purpose. As discussed earlier, the Supreme Court has determined that the purpose of this type of statute is "the promotion of fair dealing and the protection of small business." *New Motor Vehicle Board v. Orrin W. Fox Co.,* 439 U.S. at 102 n. 7, 99 S.Ct. at 408 n. 7. Based on this reasoning this court finds that the Rhode Island statute regulating the establishment of new automobile dealerships serves a legitimate local purpose.

The next inquiry, is whether the burden on interstate commerce is clearly excessive in relation to its putative local benefits. In *American Motor Sales v. Division of Motor Vehicles,* the court reversed a district court decision invalidating a Virginia statute similar to Section 31–5.1–4.2 as violative of the Commerce Clause. *American Motor Sales v. Division of Motor Vehicles,* 592 F.2d 219 (4th Cir.1979), *cert. denied,* 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979). In that case, American Motors notified an existing Jeep dealership that it intended to grant a Jeep franchise at a location approximately two miles from the established dealership. The Virginia Motor Vehicle Commissioner prohibited American from granting the franchise. Relying heavily on *New Motor Vehicle Board of California v. Orrin W. Fox Co.,* the *American* court found the Virginia statute did not impose an unconstitutional burden on interstate commerce. The *American* court noted that the statute restricted intrabrand competition by excluding a new dealership from the market. The *American* court determined that this effect alone did not constitute a violation of the Commerce Clause. In reaching this conclusion the *American* court found persuasive the *Fox* court's rejection of an argument that the California statute was an illegal restraint of trade in violation of the Sherman Act because it permitted auto dealers to invoke state power to restrain intrabrand competition. The *Fox* court noted that to invalidate a statute more than an anticompetitive effect must be shown, "[f]or if an adverse effect on competition were, in and of itself, enough to render a state statute invalid, the States' power to engage in economic regulation would be effectively destroyed." *New Motor Vehicle Board v. Orrin W. Fox Co.,* 439 U.S. at 412–413, 99 S.Ct. at 695. Based on this rationale, the *American* court determined that something in addition to a restraint of trade is required for there to be an unconstitutional burden on interstate commerce. *American Motor Sales v. Division of Motor Vehicles,* 592 F.2d at 224. In *Tober Foreign Motors v. Reiter Oldsmobile,* the Massachusetts court also determined that a similar Massachusetts statute was not violative of the Commerce Clause. *Tober Foreign Motors v. Reiter Oldsmobile,* 381 N.E.2d at 913. In *Tober,* an automobile manufacturer and a prospective franchisee sought a declaratory judgment that the Massachusetts statute which regulated the granting of new dealership franchises was violative of the Commerce Clause. The *Tober* court determined that the burden the Massachusetts statute imposed on interstate commerce was not clearly excessive to the local benefits. *Tober Foreign Motors v.*

*Reiter Oldsmobile,* 381 N.E.2d at 913–914 (citing *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970)).

■ Similarly, the Rhode Island statute serves to reduce intrabrand competition but it does not place an unconstitutional burden on interstate commerce. In the present case, the Rhode Island statute does nothing to prevent Fireside from attracting and serving Rhode Island consumers. Although, an additional competitor may detrimentally effect Fireside's business it does not constitute an unreasonable burden on commerce. The Commerce Clause protects the "interstate market, not particular interstate firms, from prohibitive or burdensome regulations." *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 127–128, 98 S.Ct. 2207, 2214–2215, 57 L.Ed.2d 91 (1978).

Even if this court accepted Fireside's claim that the statute discriminated against interstate commerce, the Rhode Island statute would still be valid. If a state statute discriminates against interstate commerce the state must evidence that the statute serves a legitimate local purpose and that this purpose could not be served as well be available nondiscriminatory means. *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986). As discussed above, the statute serves the legitimate local purpose of protecting the public in dealing with Rhode Island dealers and regulating dealers that hold Rhode Island licenses. Fireside argues that by allowing out-of-state dealerships within the relevant market area to participate in the hearing the statute's purpose could be served through nondiscriminatory means. This contention fails because the statute is aimed at protecting consumers who deal with Rhode Island dealers and regulating Rhode Island dealers. This purpose would not be served by including dealerships that were not intended to be covered by the statute.

### B. Privileges and Immunities Claim

■ Fireside's claim that the Department's interpretation of the Section 31–5.1–4.2 violates the Privileges and Immunities Clause is without merit. The Privileges and Immunities Clause provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." The Privileges and Immunities Clause applies only to natural persons. *American Trucking Ass'ns, Inc. v. Larson,* 683 F.2d 787 (3rd Cir.1982), *cert. denied,* 459 U.S. 1036, 103 S.Ct. 448, 74 L.Ed.2d 603 (1982). A corporation is not a citizen for purposes of the Privileges and Immunities Clause. *Grosjean v. Amer. Press Co.,* 297 U.S. 233, 244, 56 S.Ct. 444, 446, 80 L.Ed. 660 (1936); *Edwards v. Leaver,* 102 F.Supp. 698, 703 (D.R.I.1952). Therefore, Fireside's claim under Privileges and Immunities Clause fails.

### C. Due Process Claim

■ Fireside argues that a significant portion of its business is comprised of sales and service to Rhode Island residents. If allowed to participate in the hearing, Fireside alleges that it would have presented evidence that the Smithfield dealer would have a detrimental effect on its economic well being. To support this allegation, Fireside suggests that the new dealership will result in a twelve to fifteen percent reduction of Fireside's sales. Based on these factors, Fireside argues that the Department's interpretation of the statute violates the Due Process Clause of the Fourteenth Amendment. In Fireside's view, the Department's interpretation of the statute has the effect of depriving Fireside of the opportunity of pursuing its occupation. This claim is also without merit.

■ The Supreme Court has recognized a constitutional right to engage in the common occupations of life. *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); *Terrace v. Thompson,* 263 U.S. 197, 221, 44 S.Ct. 15, 20, 68 L.Ed. 255 (1923). The right to engage in the common occupations of life is a protectable liberty interest under the Due Process Clauses of the Fifth and Fourteenth Amendments. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). In this case, the statute limits the number of dealers who may protest a new motor vehicle dealership and restricts intrabrand competition. In dealing with a

similar California statute Justice Blackmun stated "[t]he [California] statute, however, does not deprive anyone of any realistic freedom to become an automobile dealer or to grant a franchise; it simply regulates the location of franchises to sell certain makes of cars in certain geographical areas." *New Motor Vehicle Board v. Orrin W. Fox Co.*, 439 U.S. at 113, 99 S.Ct. at 414 (Blackmun, J., concurring). The Department's decision does not prevent or prohibit Fireside from conducting business within Rhode Island. Regardless of the Department's decision, Fireside is free to advertise in Rhode Island, sell cars to Rhode Island residents and provide service to Rhode Island consumers. Apparently, Fireside construes the right to practice its occupation as the right to perform its occupation free from competition. There is a protectable liberty interest in the pursuit of one's occupation, however there is no protectable liberty interest in pursuing one's occupation in a environment free from competition.

Fireside also contends the Department, by denying Fireside the right to participate in the hearing, violated the procedural due process protections of the Fourteenth Amendment. As the Supreme Court has recognized:

> [t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right of some kind of hearing is paramount. But the range of interests protected by procedural due process is not infinite.

*Board of Regents of State Colleges v. Roth,* 408 U.S. at 569–570, 92 S.Ct. at 2705. Since, Fireside has not been deprived of a liberty or property interest, the protections of procedural due process are not triggered. *See New Motor Vehicle Board v. Orrin W. Fox Co.,* 439 U.S. at 114, 99 S.Ct. at 414 (Blackmun, J., concurring). Therefore, Fireside has failed to establish a likelihood of success on the merits on its Due Process claim.

D. Equal Protection Claim

Fireside final contention is that the Department's interpretation of Section 31–5.1–4.2 impermissibly classifies similarly situated dealers in violation of the Equal Protection Clause of the Fourteenth Amendment. Fireside argues that in-state as well as out-of-state dealers within a twenty (20) mile radius of the proposed Smithfield dealership are similarly situated, therefore the Constitution requires that both in-state and out-of-state dealers be allowed to protest the proposed dealership.

The Supreme Court has noted that in the area of economics and social welfare, "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)).

In the present case, the Rhode Island interests implicated include the protection of the public in dealing with Rhode Island dealers as well as the regulation of businesses holding Rhode Island Dealer licenses. The statute at issue here is rationally related to these legitimate state interests. The Rhode Island legislature is empowered to enact legislation which regulates and protects Rhode Island residents. Rhode Island's legislative power does not extend to citizens or businesses that reside out-of-state. "It is a reasonable ground of classification that the State has power to legislate with respect to persons in certain situations and not with respect to those in a different one." *Packer Corp. v. Utah,* 285 U.S. 105, 110, 52 S.Ct. 273, 274, 76 L.Ed. 643 (1932). The state's statute permitting only in-state dealers to protest the establishment of an additional dealership is rationally related to Rhode Island's interest in protecting and regulating its car dealers as well as protecting consumers that deal with Rhode Island dealers. Thus, in the instant case, the classification of in-state and out-of-state dealers is rationally related to the state's legitimate interests. Plaintiff has

failed to establish a likelihood of success on the merits on any of his constitutional arguments.

## CONCLUSION

Plaintiff has failed to satisfy the requirements for the issuance of a preliminary injunction. Based on the foregoing reasoning, plaintiff's requests for declaratory relief, a permanent injunction and costs are also denied.