WOLF, Judge.
This appeal arises from an action challenging the constitutionality of a single provision of the Florida Health Care and Insurance Reform Act of 1993 (the Act). Appellants argue that section 408.706(10), Florida Statutes, violates the Commerce Clause and Equal Protection Clause of the United States Constitution.[1] The trial court found a portion of the statute to be unconstitutional as violative of the Commerce Clause, but upheld the remainder of the statute. We find no error in the trial court’s determination, and affirm.
The provision at issue is contained in section 408.706, Florida Statutes (1993). Section 408.706(10), Florida Statutes (1993), provides in material part as follows:
Notwithstanding any provision of this act to the contrary, if an accountable health partnership has entered into a contract *136 with providers or facilities licensed or permitted under chapter 465 for the purpose of providing prescribed medicine services, an individual may use an independent pharmacy which is not a party to the contract, if such independent pharmacy selected agrees to provide the service at a rate equal to or less than the rate set forth in the contract negotiated by the accountable health partnership with parties to the contract and such independent pharmacy meets all of the qualifications for participation in the accountable health partnership _ For the purpose of this subsection, the term “independent pharmacy” means a pharmacy facility which is not part of a group of affiliated pharmacy facilities which are under common ownership directly or indirectly in which the group has greater than 12 pharmacy facilities in the state or has directly or indirectly any interest in any facilities licensed under another state’s laws for the purpose of providing prescribed medicine services, and the term “pharmacy facility” means a pharmacy facility which is permitted by the Board of Pharmacy in accordance with chapter 465.
(Emphasis added).
Appellants are chain drug stores which provide pharmacy services in the state of Florida. With the exception of Hareo Drug, Inc., all of the appellants operate more than 12 pharmacies in Florida. Appellants have produced unrebutted evidence that of the pharmacy companies which operate in Florida (whether interstate or intrastate), 16 operate more than 12 pharmacies in the state of Florida. There are three solely intrastate facilities in the state of Florida: City Drugs, Fedeo, Inc., and Kash N’ Karry. Of the interstate pharmacy companies operating in the state of Florida, five operate fewer than 12 pharmacies in the state of Florida.
Appellants filed a facial challenge to section 408.706(10), Florida Statutes, in circuit court, alleging that this section illegally limits access to certain Florida-based companies defined as independent pharmacies by barring (1) all pharmacies licensed under another state’s law, and (2) all pharmacies with more than 12 Florida stores. The trial court struck the provision relating to pharmacies licensed in another state as violating the Commerce Clause and severed that language from section 408.706(10). No cross appeal has been filed challenging that action.
The trial court, however, found that the provision relating to pharmacies with more than 12 Florida stores does not violate the Commerce Clause. We find the analysis of the trial court to be both complete and correct. Thus, we agree with the trial court’s analysis which examines the entire statutory framework to determine whether there was an impermissible burden on interstate commerce.[2] We, therefore, adopt the well-reasoned final judgment of the trial court which finds in pertinent part as follows:
2. Fla.Stat. § 408.706(10) 1993) is part of a statutory framework which may be found at Fla.Stat. §§ 408.70 through 480.706 (1993). In Fla.Stat. § 408.70, the Legislature has expressed its findings and intent regarding this statutory scheme.
3. Fla.Stat. § 408.70 (1993) reflects that the Legislature has found, among other things, that the current health care system in this state does not provide access to affordable health care for all persons in the state. Health insurance costs for small-sized and medium-sized businesses and their employees have spiraled. Health care costs to these groups are high. Rural and other medically underserved areas have too few health care resources. Managed care and group purchasing options are not widely available to small group purchasers.
*137 4. Fla.Stat. § 408.70(2) (1993) further provides:
“It is the intent of the Legislature that a structured health care competition model, known as ‘managed competition,’ be implemented throughout the state to improve the efficiency of the health care markets in this state. The managed competition model will promote the pooling of purchaser and consumer buying power; ensure informed cost-conscious consumer choice of managed care plans; reward providers for high-quality economical care; increase access to care for uninsured persons; and control the rate of inflation in health care costs.”
5. Finally, Fla.Stat. § 408.70 (1993) provides that community health purchasing alliances (CHPAs) are to be established and shall be responsible for assisting alliance members in securing the highest quality of health care, based on current standards, at the lowest possible prices. These CHPAs are located in each of the 11 health service planning districts, which have been established by the Legislature. Fla.Stat. §§ 408.032(5) and 408.702(1) (1993). These CHPAs are responsible for overseeing and coordinating alliance member purchases of health care.
6. The alliance members include small employers, and the state, for the purpose of providing health care benefits to state employees and their dependents through the state group insurance plan, to Medicaid recipients, participants in the MedAccess program and participants in the Medicaid buy-in program. Fla.Stat. § 408.701(4).
7. One of the mechanisms by which the legislative goal of economical high quality health care will be achieved is through the use of managed care systems or techniques. Such techniques include contracts with selected health care providers. Fla.Stat. § 408.701(17).
8. Pursuant to Fla.Stat. § 408.706(1) (1993), an accountable health partnership (AHP) may be created by health care providers, health maintenance organizations, and health insurers, for the purposes of providing health care services to the alliance members. Each AHP that seeks to offer services to members of an alliance must first obtain designation by the Agency for Health Care Administration (agency). The legislative criteria for agency designation is set forth in Fla.Stat. § 408.706(2) (1993). Those criteria include, among other matters, the ability to assure enrollees adequate access to providers of health care, including geographic availability and adequate numbers and types. Fla. Stat. § 408.706(2)(f) (1993).
9. It is generally conceded that, but for the independent pharmacy exemption, the small independent “mom and pop” style pharmacies would have great difficulty in providing pharmacy services to alliance members under the provisions of Fla.Stat. § 408.70 through 408.706, because of the provisions of Fla.Stat. § 408.706(2)(f) (1993).
10. Chain drug stores would be the only pharmacy companies which would be in a position to compete for contracts with AHPs to provide health services to alliance members. The purpose of the “independent pharmacy” exemption is to allow these “mom and pop” style pharmacies to continue to provide pharmacy services to alliance members, under the new statutory framework.
[[Image here]]

Local Purpose for § ⅛08.706

13. The State has presented two potential rationales to justify the independent pharmacy exemption. First, the State argues that the independent pharmacy exemption promotes access to health care, both in terms of providing affordable health care and geographically accessible health care. Second, the State argues that the independent pharmacy exemption protects small businesses.
[[Image here]]
II.The pharmacy facility number limitation contained in § 408.706(10) does not indirectly violate the Commerce Clause.
Plaintiffs allege that, to the extent that the definition of “independent pharmacies” excludes all pharmacy facilities which are part of a group of affiliated pharmacy facilities, under common ownership (whether directly or indirectly) in which the group has more than 12 pharmacy facilities, the section indirectly violates the Commerce Clause of the United States Constitution. The Court con- *138 eludes that the numerical limitation included in § 408.706(10) does not indirectly violate the Commerce Clause for reasons described below.
It is important to note at the outset that Plaintiffs present a facial attack to § 408.706(10) only. Plaintiffs do not allege that § 408.706(10) is unconstitutional as applied to Plaintiffs. In fact, no evidence was presented in this case to establish that § 408.706(10) has been applied in a discriminatory manner to Plaintiffs, to date. The Court finds that the numerical limitation set forth in § 408.706(10) is not clearly discriminatory, as the term is defined in Oregon Waste Systems, Inc., supra. Legislation that visits its effect upon both interstate and local business may survive constitutional scrutiny if it is narrowly drawn. Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 37, [100 S.Ct. 2009, 2016, 64 L.Ed.2d 702] (1980).
The United States Supreme Court, in Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), set forth the test to be applied to statutes which are alleged to indirectly violate the Commerce Clause. The Court stated:
“Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities, (citations omitted)” Id., 447 U.S. at [36-37] 142 [100 S.Ct. at 2015-16]. See also Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 36-37 [100 S.Ct. 2009, 2015-16, 64 L.Ed.2d 702] (1980); Diamond Waste, Inc. v. Monroe County, Ga., 939 F.2d 941 (11th Cir.1991); and Fireside Nissan, Inc. v. Fanning, 828 F.Supp. 989 (D.R.I.1993).
In the instant case, the court finds that the challenged statute regulates evenhandedly with only “incidental” effects on interstate commerce. The numerical limitation operates to exclude both intrastate and interstate pharmacy companies from the reach of the exemption, to the extent that those pharmacy companies operate more than 12 pharmacy facilities in Florida. Plaintiff Kash N’ Karry, which is an intrastate pharmacy company, is a case in point. Because Kash N’ Karry operates more than 12 affiliated pharmacy facilities in Florida, it does not fall within the independent pharmacy exemption even though it operates solely within the State of Florida. Likewise, 10 of the other 11 Plaintiffs do not meet this numerical limitation necessary to benefit from the independent pharmacy exemption. The Court finds that § 408.706(10) serves a legitimate local purpose of promoting access to health care services in this state. The problem of health care access, as described by the Florida Legislature in Fla.Stat. § 408.70(1) is a function of two differing problems. First there is the problem of affordable health care and health care insurance. Second there is a problem of geographical access in rural and underserved areas.
With regard to the problem of affordable health care and health care insurance, the numerical limitation on the independent pharmacy exemption is completely consistent with this goal. As note above, Fla.Stat. §§ 480.70 through 408.706 (1993), provides that AHPs will contract with various health care providers (including pharmacy facility providers) to provide health care services within an alliance area. The goal of the statute is to obtain health care services at the lowest possible cost. This is done through AHP contracts with selected health care providers. See Fla.Stat. § 408.701(17) (1993). It logically follows that a guarantee to a health care provider, like a chain pharmacy company, that the provider would provide the majority of health care services within an alliance district, would operate as an incentive to the health care provider to provide the services at the lowest possible price.[3] In *139 contrast, if many pharmacy facilities may provide pharmacy services without a contract, simply by matching the contract price, there is little incentive for a chain store to fiercely bid to provide health care services at the lowest possible price.
In the instant case, the Legislature has “drawn a line” in defining the independent pharmacy exemption so that only approximately 10% of the pharmacy facilities that operate within the state would benefit from the exemption. In contrast, the other 90% (including both intrastate and interstate Pharmacy Companies) are beyond the scope of the exemption and must either obtain the contract or they will not be able to provide services to the alliance members. The court finds that the numerical limitation contained in the independent pharmacy exemption is logically related to the legislative goal of access to affordable health care. The court further finds that this goal of access to affordable health care is a legitimate local purpose. The court also finds that the numerical limitation contained in the independent pharmacy exemption is logically related to the legislative goal of geographical access to health care in rural and underserved areas. In this regard, Plaintiffs have argued that the chain pharmacy provider which is awarded a contract by an AHP must demonstrate an ability to provide geographical access to health care within the alliance area. Without disagreeing with this argument, the Court would note that the independent pharmacy exemption, to the extent that it allows independent pharmacies located in rural or un-derserved populations to provide pharmacy services even though they have no contract with an AHP to do so operates to augment pharmacy services in areas which the Legislature has found to be lacking in access to health care services. The court, therefore, finds that § 408.706(10) is supported by the legitimate local purpose of affording access to health care.
The exemption at issue is narrowly drawn, and consistent with the express legislative intention and findings, found at Fla.Stat. § 408.70 (1993).
On its face, § 408.706(10) is also designed to protect “small pharmacy businesses” (i.e., pharmacy facilities which are part of a group of affiliated pharmacies which own directly or indirectly 12 or fewer pharmacies in Florida).
Protection of small business is a legitimate local purpose. New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 439 U.S. 96, 102 n. 7 [99 S.Ct. 403, 408 n. 7, 58 L.Ed.2d 361] (1978); and Fireside Nissan, Inc. v. Fanning, 828 F.Supp. at 999. To the extent that § 408.807(10) seeks to protect small business (as distinct from local business), the Court finds that there is a legitimate local purpose for the number limitation in that section.
The Court finds that § 408.706(10) represents a narrowly drawn accommodation between the goals of improving access to health care in terms of affordability, improving geographical access to health care, and preserving or protecting small business. The court finds that the burden imposed on interstate commerce, by § 408.706(10) is not clearly excessive in relation to the putative local benefits.[4] Accordingly, the Court finds that § 408.706(10) does not indirectly violate the Commerce Clause of the United States Constitution.
Affirmed.
ERVIN, J., concurs.
MINER, J., dissents with written opinion.

. We find no merit in appellant's equal protection challenge, and affirm as to that issue without further discussion.

. Appellant argues that the trial court impermis-sibly focused on the entire statutory scheme rather than the challenged provision in determining whether there was an impermissible burden on interstate commerce. Appellant based its argument in part on the case of Associated Industries of Missouri v. Lohman, -U.S.-, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994). We find nothing in that case which so restricts such analysis. In fact, at page 1825, Justice Thomas states that an appropriate Commerce Clause analysis may not only involve looking at two separate statutes, but also may involve looking at the structure promulgated at two levels of government within the state.

. [Footnote from final judgment]
Common sense reflects that greater volume of business will allow costs to be spread over a greater number of services, resulting in an overall cost savings. This is often referred to as "economies of scale.”

. [Footnote from final judgment]
In the instant case, Plaintiff has not clearly demonstrated that the exemption actually operates to burden interstate commerce. When the exemption is viewed in the context of the statute as a whole, it does not appear that the numerical exemption has the effect of discriminating against interstate commerce. Through the provisions of Fla.Stat. §§ 408.70 through 480.706 (1993), the Florida Legislature has effectively restructured the health care service delivery market, at least insofar as that market applies to alliance members. From the statute, it appears that the effect of the statute as a whole will not be to shift business from interstate to intrastate providers, but rather, to shift business among interstate providers. The interstate provider who obtains the contract to provide health care services in an alliance area will take over the business of all of the interstate providers, and some of the intrastate providers in the alliance areas. The exemption only allows small businesses to remain in business.